USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/9/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARABUDEEN ABDUL AZEEZ,

Plaintiff,

-v-

MATHAIAH RAMAIAH,

Defendant.

14 Civ. 5623 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Between April 2011 and March 2014, plaintiff Sarabudeen Abdul Azeez was employed as a waiter at Flagship S B New York, LLC, d/b/a Saravana Bhavan Lexington ("Saravana"), a restaurant in Manhattan. Azeez brings this suit against Mathaiah Ramaiah, the owner of that restaurant. Azeez alleges that Ramaiah failed to pay him minimum wage and overtime compensation, unlawfully retained and pooled his tips, did not maintain proper records and notices, and terminated him in retaliation for filing a complaint with the New York State Department of Labor ("DOL"), in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 198, 215, 663. Ramaiah now moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court grants the motion to dismiss in part and denies it in part.

## I. Background

### A. Factual Background[1]

On April 15, 2011, Azeez began working as a waiter at Saravana. Am. Compl. ¶ 13. Between that date and approximately December 17, 2012, Azeez "typically worked between 61 and 66 hours per week" and "received a fixed weekly rate of pay in cash ranging from $475 to $600, regardless of the amount of hours he actually worked." *Id.* ¶¶ 16, 19. Azeez was also required to turn over all cash tips he received; Ramaiah "retained the cash tips collected, as well as all tips paid by credit card." *Id.* ¶ 24. He "did not return any tips to the employees." *Id.*

[1] These facts are drawn primarily from the Amended Complaint. Dkt. 16 ("Am. Compl."). In resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

At the motion to dismiss stage, the Court "may consider 'any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)) (alteration in original). Additionally, "it is 'well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).'" *Burfeindt v. Postupack*, 509 F. App'x 65, 67 (2d Cir. 2013) (summary order) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)). Accordingly, the Court considered the documents attached to the Amended Complaint, which consist of a Saravana sales report, bankruptcy court filings, and filings from other cases in this District. Dkt. 16, Exs. A–C. The Court also considered the publicly available court filings attached to the Affirmation of Brian L. Greben in Support of the Motion to Dismiss. Dkt. 24, Exs. C, E, F, G, I, J, K.

The Court did not, however, consider the Affidavit of Mathaiah Ramaiah in Support of the Motion to Dismiss or Exhibits A, B, D, or H to the Greben Affirmation. Those documents—employment records and emails between plaintiff's counsel and defense counsel—are not matters of public record, nor are they incorporated into the Amended Complaint by reference. There is no indication that plaintiff relied on them in drafting the complaint, "a necessary prerequisite to the court's consideration of the document[s] on a dismissal motion." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). To the contrary, the Amended Complaint alleges that Ramaiah "failed to keep accurate records of the hours worked by plaintiff." Dkt. 16 ¶ 21. The records defendant offers are, therefore, not properly considered at this stage.

At some point, the New York State DOL began investigating Saravana in response to an employee's complaint of unlawful employment practices. *Id.* ¶ 27. On or about December 17, 2012, Ramaiah "implemented new employment and payment practices" to address the DOL's concerns. *Id.* ¶ 28. Azeez's "weekly schedule was reduced from an average of 65 hours per week to approximately 40 hours or less per week." *Id.* ¶ 29. For that work, Azeez received $5 per hour plus a share of the tips received during each shift he worked. *Id.* ¶ 30. Under the "mandatory tip pool" that Ramaiah implemented, "tips were collected, pooled, and redistributed" to "the captain, waiters, food runners, busboys, and expeditors" at the end of each shift. *Id.* ¶¶ 30–34. Expeditors, "[a]lthough included in the tip pool," were primarily responsible for plating food and "worked entirely within the kitchen." *Id.* ¶¶ 35–36.

On January 31, 2013, Azeez filed a complaint with the New York State DOL regarding, *inter alia*, the allegedly unlawful tip pool. *Id.* ¶ 39. Azeez believes this complaint is still pending. *Id.* In February 2014, Saravana filed for Chapter 11 bankruptcy. *Id.* ¶ 40.[2] On March 6, 2014, "[w]ithin a month after Saravana filed for bankruptcy," Azeez was fired. *Id.* ¶ 41, 43. Azeez "was told that he was fired for arriving ten minutes late to work. During [his] employment, however, it was not the restaurant's usual practice to fire an employee for arriving ten minutes late on one occasion." *Id.* ¶ 43. Two other employees, both of whom had also filed complaints with the DOL, were fired the same week, *id.* ¶ 41; the Amended Complaint is silent as to the circumstances of those terminations.

In late May or early June 2014, Azeez moved back to India, his country of origin. *See id.* ¶ 60. He may not be able to return to the United States due to his immigration status. *Id.* ¶ 61.

---

[2] After Saravana's financial situation later improved, the bankruptcy proceedings were dismissed on December 3, 2014. *See In re Flagship S B New York, LLC d/b/a Saravana Bhavan Lexington*, No. 14-40531, at Dkt. 33.

Before leaving the country, however, he authorized counsel to pursue FLSA and NYLL claims on his behalf. *Id.* ¶¶ 59, 63, 66.

### B. Procedural History

On July 23, 2014, Azeez filed the original complaint in this action. Dkt. 1. On September 2, 2014, Ramaiah moved to dismiss. Dkt. 10–14. On September 22, 2014, Azeez filed the Amended Complaint. Dkt. 16. On October 8, 2014, Ramaiah filed a renewed motion to dismiss, Dkt. 21, along with a memorandum of law, Dkt. 22 ("Def. Br."), the Affirmation of Brian L. Greben, Dkt. 23 ("Greben Aff."), and the Affidavit of Mathaiah Ramaiah, Dkt. 24 ("Ramaiah Aff."). Ramaiah moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). On October 21, 2014, Azeez submitted his opposition. Dkt. 25 ("Pl. Br"). And on October 28, 2014, Ramaiah submitted his reply. Dkt. 26 ("Reply Br.").

## II. Subject Matter Jurisdiction

Under 28 U.S.C. § 1331, a district court has original jurisdiction over all civil actions arising under federal statutes such as the FLSA. Ramaiah nevertheless argues that the Court lacks subject matter jurisdiction over this case because the "affidavit of Mr. Ramaiah, as well as the employment records annexed to the accompanying Affirmation of Brian L. Greben, demonstrate that no violations of the FLSA occurred with respect to plaintiff." Def. Br. 10–11. But a complaint's "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Dismissal "for want of jurisdiction" is appropriate only "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (quoting *Bell*, 327 U.S. at 682–83); *see also id.* at 1189 (permitting dismissal for lack of subject matter jurisdiction only "where the federal question 'is so plainly insubstantial as to be devoid of any merits and thus [does] not present[] any issue worthy of adjudication.'" (quoting *Giulini v. Blessing*, 654 F.2d 189, 192 (2d Cir. 1981)) (alterations in original).[3] Azeez's claims, even if ultimately unsuccessful, are not "wholly insubstantial and frivolous." On the contrary, as discussed at pages 8–11, *infra*, the Amended Complaint states a viable claim for relief under the minimum-wage provisions of the FLSA.

Moreover, although a district court may consider evidence outside the pleadings on a defendant's motion to dismiss for lack of subject matter jurisdiction, *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), that extrinsic evidence must pertain to jurisdictional facts, *see Kickstarter, Inc. v. ArtistShare, Inc.*, No. 11 Civ. 6909 (PAC), 2012 WL 1192021, at *3 (S.D.N.Y. Apr. 10, 2012); *Monaia v. Grinell*, No. 96 Civ. 9769 (LMM), 1997 WL 363813, at *1 (S.D.N.Y. July 1, 1997), not the merits of the plaintiff's case. For example, the requirement that defendant be an "enterprise engaged in commerce" as defined by the FLSA—*i.e.*, that it "has employees engaged in commerce" and has annual gross sales "not less than $500,000," 29 U.S.C. § 203(s)(1)(A)—has sometimes been treated as "jurisdictional." *Velez v. Vassallo*, 203 F. Supp. 2d 312, 330 (S.D.N.Y. 2002) (collecting cases). The affidavits and records presented here, however, pertain to the merits of Azeez's claims, not to a jurisdictional fact. The Court therefore declines to consider them in evaluating the viability of Azeez's claims.

---

[3] Ramaiah's 12(b)(1) motion demonstrates the need for this rule: Under the approach he pursues, a defendant could package any motion to dismiss for failure to state a claim as a challenge to subject matter jurisdiction, submit merits-related evidence, and force the Court to resolve the factual merits of plaintiff's claims before discovery. This approach would subvert the pleading rules by transforming every motion to dismiss into a one-sided motion for summary judgment.

Ramaiah asserts two other challenges to the Court's jurisdiction, but both are unavailing. First, Ramaiah objects that the Amended Complaint is "unverified" and does not attach any "sworn statements." Def. Br. 12. Plaintiffs, however, are not required to verify their complaints in FLSA cases. *See* Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.").

Second, Ramaiah argues that this action should be dismissed for failure to prosecute because Azeez is in India and purportedly cannot return to the United States. Def. Br. 12–13. That request is premature. The Court has no reliable information about Azeez's present whereabouts, let alone proof that he will be unable to participate in the case (*e.g.*, to be deposed). Further, "[i]mmigration status is irrelevant to an employee's rights under FLSA." *Jimenez v. KLB Foods, Inc.*, No. 12 Civ. 6796 (JPO), 2014 WL 2738533, at *3 (S.D.N.Y. June 17, 2014).[4] Ramaiah's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

**III. Failure to State a Claim**

Azeez brings four sets of claims under the FLSA and NYLL: for failure to pay minimum wage and overtime compensation (Counts Three through Seven), for unlawful retention and pooling of tips (Counts One and Two), for improper maintenance of employment records and

---

[4] Even if Azeez were an undocumented immigrant, as Ramaiah alleges, he is still entitled to bring claims for unpaid wages under the FLSA. *See, e.g.*, *Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451, 453 (S.D.N.Y. 2013) ("In FLSA actions, such as this case, the courts have traditionally permitted undocumented workers to recover unpaid minimum wage and overtime pay for work that has already been performed."); *Angamarca v. Da Ciro, Inc.*, 303 F.R.D. 445, 448 (S.D.N.Y. 2012) ("Defendants seek to benefit from their own wrong-doing by escaping liability for violating FLSA when undocumented workers eventually return to their home countries. The Court finds that such a result is inconsistent with the intent behind FLSA."); *Solis v. Cindy's Total Care, Inc.*, No. 10 Civ. 7242 (PAE), 2011 WL 5170009, at *1 (S.D.N.Y. Oct. 31, 2011), *supplemented*, 2011 WL 6013844 (S.D.N.Y. Dec. 2, 2011) ("By its terms, the FLSA applies to 'any individual' employed by an employer, as the term 'employer' is defined by the Act. The Act contains no exception or exclusion for persons who are not U.S. citizens or who are in this country illegally." (citation omitted)).

notices (Count Eight), and for retaliation (Counts Nine and Ten). After setting out the applicable legal standards governing motions to dismiss under Rule 12(b)(6), the Court addresses each set of claims in turn.

### A. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pled factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Minimum Wage and Overtime Compensation

The Amended Complaint includes five claims related to Azeez's compensation: Counts Three and Four allege failure to pay a minimum wage in violation of the FLSA and NYLL, respectively; Counts Five and Six allege failure to pay overtime wages in violation of the FLSA and NYLL, respectively; and Count Seven alleges failure to provide spread-of-hours pay, as required by the NYLL. Am. Compl. ¶¶ 89–138. Because these claims rely on a common set of factual allegations, the Court addresses them together.

### 1. Relevant FLSA and NYLL Provisions

The FLSA requires covered employers to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1). If an employee "customarily and regularly receives more than $30 a month in tips," however, the FLSA permits the employer to claim a tip credit of up to $5.12 per hour and pay a reduced minimum wage of as little as $2.13 per hour as long as the employer satisfies certain conditions. *See id.* §§ 203(m), 203(t). Specifically, the employer (1) must inform the employee of the tipped minimum-wage provisions, and (2) may not retain any portion of the employee's tips or distribute them to non-tipped employees. *Id.* § 203(m).[5] If an employer violates either of these provisions, he is not entitled to claim a tip credit and must pay the full minimum-wage rate. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage."). The FLSA also provides that for overtime work—work in excess of 40 hours per week—the employer must compensate the employee "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). For employees who receive a regular minimum wage of $7.25 per hour, the applicable overtime rate is $10.88 per hour. For tipped employees, the applicable overtime rate is $5.76. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011) (explaining that the minimum tipped overtime wage is the regular overtime wage, $10.88 per hour, minus the maximum tip credit, $5.12 per hour).

---

[5] Further, if the employee does not in fact receive sufficient tips to earn at least $7.25 per hour, the employer must make up the difference. *Id.* § 203(m)(2).

The NYLL contains parallel provisions, albeit with some distinctions. *See* N.Y. Lab. Law § 652 (minimum wage); *id.* § 196-d (gratuities); *id.* § 160 (overtime). For instance, the New York state minimum wage rose from $7.25 to $8 per hour on December 31, 2013, and the tipped minimum wage was $4.90 per hour throughout the relevant period. *See* N.Y. Lab. Law §§ 652(1), 652(4); N.Y. Comp. Codes R. & Regs. tit. 12 § 137-1.4. In addition, the NYLL entitles an employee to spread-of-hours pay, meaning "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required" for any shift "in which the spread of hours exceeds 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12 § 137-1.7. The "spread of hours" refers to "the interval between the beginning and end of an employee's workday." *Id.* § 137-3.11. In other words, employers must "pay servers an extra hour's pay at the regular minimum wage for each day they work more than ten hours." *Shahriar*, 659 F.3d at 241.

**2. Azeez's Claims**

As alleged in the Amended Complaint, Ramaiah used significantly different payment practices before and after December 17, 2012. The Court therefore considers these two time periods separately.

Between April 15, 2011 and December 17, 2012, Ramaiah paid Azeez "a fixed weekly rate of pay in cash ranging from $475 to $600, regardless of the amount of hours he actually worked." Am. Compl. ¶ 16. During this time, Azeez "typically worked between 61 and 66 hours per week" and "average[d]" 65 hours per week. *Id.* ¶¶ 19, 29. These allegations do not sufficiently plead that Azeez's "average hourly wage [fell] below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). If Azeez worked 13 hours per day, five days per week—a total of 65 hours per week—he should have

received, at a minimum, $598.25.[6] A weekly stipend of $600 therefore would have fulfilled Ramaiah's minimum wage and overtime compensation obligations under both federal and state law.[7] At the opposite end of the payment range alleged in the Amended Complaint, a weekly stipend of $475 would have complied with federal and state law as long as Azeez worked no more than 57 hours in any given week.[8]

It is, of course, imaginable that Azeez worked more than 65 hours in a week when he received a $600 stipend, or more than 57 hours in a week when he received a $475 stipend—or that there was some other combination of hours and pay that violated federal and/or state law. However, "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114. Azeez has not identified "a single workweek in which [he] worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.* at 114. The Amended Complaint's allegations regarding what "typically" occurred could "theoretically" support a finding of a FLSA or NYLL violation "in one or another unspecified week (or weeks); but [the] allegations supply nothing but low-octane fuel for speculation, not the plausible claim that is required." *Id.* at 115; *accord Nakahata v. New York–Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a

---

[6] Specifically, Azeez would have been entitled to $290 for his first 40 hours of work, $272 for his 25 hours of overtime, and $36.25 in spread-of-hours pay.

[7] Setting aside spread-of-hours pay, which is not required by the FLSA, a weekly stipend of $600 would have adequately compensated Azeez for as many as 68 hours of work in a single week.

[8] If Azeez worked 9.5 hours per day, six days per week, he would have been entitled to $290 for his first 40 hours of work and $184.96 for his 17 hours of overtime, a total of $474.96.

reasonable inference that they worked more than forty hours in a given week."). Azeez therefore has not stated a claim with respect to Ramaiah's pay practices through December 17, 2012.

On or about December 17, 2012, however, Ramaiah began to pay Azeez an hourly wage, rather than a weekly stipend. Am. Compl. ¶ 28. Instead of receiving $475 to $600 per week, Azeez received $5 per hour plus a share of the tips received during each shift he worked. *Id.* ¶ 30. Under the "mandatory tip pool" that Ramaiah implemented in December 2012, "tips were collected, pooled, and redistributed" to "the captain, waiters, food runners, busboys, and expeditors" at the end of each shift. *Id.* ¶¶ 30–34. Expeditors, "[a]lthough included in the tip pool," were primarily responsible for plating food and "worked entirely within the kitchen." *Id.* ¶¶ 35–36. Ramaiah also "failed to inform [Azeez] that his tips would be used as a credit against the minimum wage." *Id.* ¶ 31. At the same time, on or about December 17, 2012, Ramaiah reduced Azeez's weekly schedule "from an average of 65 hours per week to approximately 40 hours or less per week." *Id.* ¶ 29. These new policies remained in place for the remainder of Azeez's employment, which ended on March 6, 2014. *See id.* ¶ 43.

The Amended Complaint squarely alleges that Ramaiah (1) failed to inform Azeez of the tipped minimum wage provisions, and (2) distributed a portion of Azeez's tips to non-tipped employees. Am. Compl. ¶¶ 31, 35–36. On the facts pled, Ramaiah therefore failed to satisfy the conditions required to claim a tip credit, and so Azeez was entitled to be paid the full federal and state minimum wage. *See* 29 U.S.C. § 203(m); N.Y. Lab. Law § 196-d; *see also Shahriar*, 659 F.3d at 241; *Jimenez*, 2014 WL 2738533, at *3; *Copantitla*, 788 F. Supp. 2d at 290. The Amended Complaint thus states a claim for failure to pay a minimum wage in violation of the FLSA and NYLL.

However, Azeez has not identified "a single workweek" between December 17, 2012 and March 6, 2014 "in which [he] worked at least 40 hours and also worked uncompensated time in excess of 40 hours," or a single day on which he worked more than 10 hours. *Lundy*, 711 F.3d at 114. To the contrary, the Amended Complaint alleges that Azeez worked "40 hours or less per week" during this time period. Am. Compl. ¶ 29. Accordingly, the Amended Complaint does not state a claim for failure to pay overtime compensation or spread-of-hours pay in the December 17, 2012 to March 6, 2014 time period.

In sum, the Amended Complaint does not state a claim for failure to provide overtime compensation in violation of the FLSA or NYLL, nor does it state a claim for failure to provide spread-of-hours pay in violation of the NYLL. The Court therefore dismisses Counts Five, Six, and Seven. However, the Court sustains Counts Three and Four, the minimum wage claims, to the extent those counts pertain to the time period from December 17, 2012 to March 6, 2014.[9]

### C. Unlawful Retention of Tips

Counts One and Two allege unlawful retention of tips in violation of the FLSA and unlawful deduction of tips in violation of the NYLL, respectively. Am. Compl. ¶¶ 77–96. Concretely, the Amended Complaint alleges that Azeez was required to give all cash tips he received to the captain on duty or to put the money in a designated tip box. *Id.* ¶ 24. Between April 15, 2011 and December 17, 2012, Ramaiah "retained the cash tips collected, as well as all tips paid by credit card." *Id.* From December 17, 2012 to March 6, 2014, "tips were collected,

[9] The parties dispute whether the Amended Complaint adequately pleads willfulness, such that a three-year rather than a two-year statute of limitations applies to Azeez's FLSA claims. *See* 29 U.S.C. § 255. Because the Court sustains the FLSA claims only as to this time period, it need not resolve this issue.

pooled, and redistributed to employees" including "the captain, waiters, food runners, busboys, and expeditors." *Id.* ¶¶ 33–34.

There is no federal cause of action for unlawful retention of tips. The FLSA provides a "right of action" against "[a]ny employer who violates the provisions of section 206," which establishes minimum wage obligations, "or section 207," which governs maximum hours and overtime compensation. 29 U.S.C. § 216(b). The provisions regarding tips appear in § 203, the definition section. *See id.* § 203(m) (defining "wage"). As noted, § 203(m) provides that an employer may claim a "tip credit" and pay a reduced minimum wage as long as the employer (1) informs the employee of the tipped minimum wage provisions, and (2) does not retain employees' tips or distribute them to non-tipped employees. *Id.* Section 203(m) thus "imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees. A statute that provides that a person must do X in order to achieve Y does not mandate that a person must do X, period." *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 (9th Cir. 2010).[10] The facts alleged therefore state a claim for a violation of the FLSA minimum

[10] Several district courts have reached the same conclusion as the Ninth Circuit. *See, e.g.*, *Schaefer v. P.F. Chang China Bistro, Inc.*, No. 14 Civ. 185 (PHX) (SMM), 2014 WL 3809069, at *6 (D. Ariz. Aug. 1, 2014) ("Section 216 does not, however, authorize a direct right of action for a violation of § 203(m). Rather, if an employer has not notified tipped employees that their wages are being reduced pursuant to the FLSA's tip-credit provision under § 203(m), the offending employer loses the right to claim the tip credit in satisfaction of its minimum wage obligation to the employee."); *Widjaja v. Kang Yue USA Corp.*, No. 09 Civ. 2089 (RRM) (CLP), 2011 WL 4460642, at *3 (E.D.N.Y. Sept. 26, 2011) ("Sharing tips with an employer constitutes an employer's retention of tips, thus violating . . . the FLSA tip credit conditions."); *id.* at *2 n.6 ("[F]ederal law only proscribes the retention of tips if the employee is paid less than minimum wage."); *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 722 (W.D. Tex. 2010) ("[U]nlike section 206 and 207, section 203(m) does not constitute an independent cause of action available to employees under the FLSA. Rather, section 203(m) is a 'partial exception [to the minimum wage requirements of section 206 that] exists for tipped employees.'" (citations omitted)).

wage requirements, as asserted in Count Three, *see* pp. 8–11, *supra*, but do not amount to an independent violation of the FLSA, as asserted in Count One.

The federal DOL regulation cited in the Amended Complaint does not alter this conclusion. *See* Am. Compl. ¶¶ 82–84. It provides, in relevant part:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52. Plaintiff is correct that this regulation bars an employer from retaining tips. But this prohibition does not give rise to an independent right of action because, while "a regulation may invoke a private right of action that Congress through statutory text created, . . . it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979)). Put differently, to the extent this regulation purports to create such cause of action, *see* 76 Fed. Reg. 18832, 18841, it cannot overcome § 216 and § 203(m), which are "not plausibly read to impose a nationwide freestanding code of conduct regarding the handling of tip money where the statute's minimum wage command is otherwise met," *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 562 (S.D.N.Y. 2013); *see also Woody Woo*, 596 F.3d at 581; *Chung*, 246 F. Supp. 2d at 230.

The NYLL, by contrast, creates a cause of action for misappropriation of tips. *See* N.Y. Lab. Law § 198 (authorizing civil actions); *Winans v. Starbucks Corp.*, 796 F. Supp. 2d 515, 518 (S.D.N.Y. 2011); *Chung*, 246 F. Supp. 2d at 229–30. Under § 196, "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d. Tip-pooling is permitted, but only "with a busboy or similar employee." *Id.*

The Amended Complaint alleges that Ramaiah retained all of Azeez's tips from April 15, 2011 to December 17, 2012, and improperly shared those tips with kitchen staff from December 17, 2012 to March 6, 2014. Am. Compl. ¶¶ 24, 30–36. It therefore states a claim under § 196, and the Court denies Ramaiah's motion to dismiss Count Two.

**D. Notice**

Count Eight alleges improper notice and recordkeeping in violation of the NYLL. Am. Compl. ¶¶ 139–47. Under § 195, "[e]very employer" is required to provide his or her employees with written notices that include the rate of pay, the basis for that pay rate, and any allowances claimed as part of the minimum wage, among other information. N.Y. Lab. Law §§ 195(1)(a), 195(3). Such notices must be provided "at the time of hiring" and again "with every payment of wages." *Id.* The Amended Complaint alleges that Ramaiah failed to provide Azeez with the required written notice at the time of hiring, Am. Compl. ¶¶ 17, 141, and failed to provide complete and accurate wage statements thereafter, *id.* ¶ 143. And it alleges that Ramaiah "did not maintain any system of tracking the number of hours worked by, or the arrival and departure times of, any employee each day," necessarily meaning that the records of hours Azeez worked were inaccurate. *Id.* ¶¶ 20–21. Further, it alleges that Ramaiah did not provide notice that he was claiming a tip credit against Azeez's minimum wage. *Id.* ¶ 31. These factual allegations adequately plead a violation of the NYLL's notice and recordkeeping provision. The Court therefore denies Ramaiah's motion to dismiss Count Eight.

**E. Retaliation**

Counts Nine and Ten allege unlawful retaliation in violation of the FLSA and NYLL, respectively. Am. Compl. ¶¶ 148–57. Under the FLSA, it is unlawful for any employer "to discharge or in any other manner discriminate against any employee because such employee has

filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(3). "FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). "Thus, a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Id.* The NYLL contains a closely analogous provision. *See Copantitla*, 788 F. Supp. 2d at 301–02 (citing N.Y. Lab. Law § 215).

Here, the Amended Complaint alleges that, on January 31, 2013, Azeez filed a complaint regarding Ramaiah's employment practices with the New York State DOL and that, on March 6, 2014, he was terminated. Am. Compl. ¶¶ 39, 43. It therefore adequately pleads that Azeez participated in a protected activity and experienced an adverse employment action, the first and second elements of a *prima facie* case of retaliation.

As to the causal connection between the protected activity and the adverse action, the third and final element of the *prima facie* case, the Amended Complaint alleges that Saravana filed for bankruptcy in February 2014, *id.* ¶ 40, and that "[w]ithin a month" of the bankruptcy filing, Ramaiah "fired each of the three employees who had filed complaints with the DOL," *id.* ¶ 41. It also alleges that, "upon information and belief," Ramaiah "waited until after Saravana filed for bankruptcy in an attempt to mask defendant's improper and retaliatory motives for firing them." *Id.* ¶ 42. It further alleges that Ramaiah falsely told Azeez "that he was fired for arriving ten minutes late to work," whereas "it was not the restaurant's usual practice to fire an

employee for arriving ten minutes late on one occasion." *Id.* ¶ 43. Thus, the Amended Complaint alleges, the proffered reason for Azeez's termination was pretextual. *Id.* ¶ 44.

"[A] causal connection between an adverse action and a plaintiff's protected activity may be established" in either of two ways: "'by showing that the protected activity was closely followed in time by the adverse action,'" *Mullins*, 626 F.3d at 53 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)), or "'through evidence of retaliatory animus directed against a plaintiff by the defendant,'" *id.* (quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). As to the first type of proof, Azeez was fired over a year after he submitted a complaint to the state DOL; the lengthy gap does not suggest a causal relationship. *See Wang v. Palmisano*, No. 13 Civ. 2186 (KMK), 2014 WL 5011099, at *14 (S.D.N.Y. Sept. 30, 2014) (collecting cases holding that a temporal relationship gives rise to an inference of retaliatory motive only where the protected activity was followed closely in time by the adverse action); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 474 (S.D.N.Y. 2008) (collecting cases holding that gaps between one and five months could support an inference of causal connection).

As to the second type of proof, the Amended Complaint alleges some circumstantial evidence of retaliatory animus, namely, that two other employees who had filed complaints with the DOL were fired the same week as Azeez. *See* Am. Compl. ¶ 41. However, this allegation is insufficient to state a claim for unlawful retaliation. Critically, the Amended Complaint does not allege that employees who did not file DOL complaints were treated differently than those that did—*i.e.*, that such employees were not terminated. *See Johnson*, 931 F.2d at 207; *Bhaduri v. Summit Sec. Servs., Inc.*, No. 05 Civ. 7024 (HB), 2006 WL 2290766, at *6 (S.D.N.Y. Aug. 8, 2006) (Plaintiff "must demonstrate that he was treated differently from similarly situated

employees to demonstrate a causal connection between the protected activity and the retaliatory activities."). Nor does it allege any direct evidence of retaliatory animus. It does not, for example, recite any statements by Ramaiah ever referring to, let alone condemning, Azeez's protected activity. Further, the Amended Complaint suggests a legitimate, non-discriminatory reason for Azeez's (and others') termination: Saravana was in bankruptcy and in financial straits that necessitated layoffs. Although retaliation is certainly one possible explanation for Azeez's termination, the allegations in the Amended Complaint do not "nudge[]" the retaliation claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court therefore dismisses Counts Nine and Ten.

**CONCLUSION**

For the foregoing reasons, the Court denies Ramaiah's motion to dismiss Counts Two, Three, Four, and Eight, and grants the motion as to all other claims. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 10 and 21.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: April 9, 2015
New York, New York